IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES MANNING )
) No. 14-1508
v.

CAROLYN W. COLVIN

**OPINION AND ORDER**

**SYNOPSIS**

Plaintiff filed an application for disability insurance benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq., alleging disability due to various mental and physical impairments. His claim was denied initially, and upon hearing by an Administrative Law Judge ("ALJ"). Before the Court are the parties' Cross-Motions for Summary Judgment, which involve only Plaintiff's mental condition. For the following reasons, Plaintiff's Motion will be denied, and Defendant's granted.

**OPINION**

**I. STANDARD OF REVIEW**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3)7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's

1

findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

## II. THE PARTIES' MOTIONS

In this appeal, Plaintiff argues that the ALJ improperly gave diminished weight to the opinions of treating therapist Tim Gigliotti and treating psychiatrist Dr. Mandoly; and failed, in the residual functional capacity assessment ("RFC"), to account for Plaintiff's stress-related limitations in responding to work pressures and to changes in a work setting.[1]

### A. Medical Evidence

Plaintiff suggests that the ALJ improperly rejected Dr. Mandoly's opinion, because the ALJ focused too heavily on GAF scores, and mischaracterized Plaintiff's medical progress. The ALJ, thoroughly assessed Dr. Mandoly's treatment notes, and concluded that his statement of disability was inconsistent with those notes. The ALJ further found that Dr. Mandoly did not cite to medical evidence of record, or provide limitations, other than noting that Plaintiff was

---

[1] I do not address Plaintiff's contentions regarding Dr. Grace, who was not involved in the present case.

"permanently disabled." Similarly, while Mr. Gigliotti opined that Plaintiff was not a candidate for employment, the ALJ noted his status as a therapist, rather than an "acceptable medical source." The ALJ further noted inconsistencies and lack of functional limitations associated with Mr. Gigliotti's opinion. Moreover, GAF scores remain relevant and acceptable evidence. Jones v. Colvin, 2015 U.S. Dist. LEXIS 74986, at *15 (W.D. Pa. June 10, 2015). Here, the ALJ used the GAF scores as summarized evidence of Plaintiff's progress. This was not improper. In sum, the ALJ offered several legitimate reasons for the weight assigned the opinions of Mr. Gigliotti and Dr. Mandoly.

Plaintiff also takes issue with the ALJ's treatment of Plaintiff's 2013 hospitalization, suggesting that the ALJ discounted the incident because it was related to situational stressors. The ALJ, however, addressed those stressors, as well as the course of the hospitalization, to conclude that the hospitalization was an anomaly, rather than indicative of Plaintiff's ongoing condition; the cause of the incident was not itself dispositive of the ALJ's treatment. I find no error in this regard. Whether I would have weighed the evidence differently is not the pertinent issue; I cannot substitute my judgment for that of the ALJ.

B. **Stress-related Limitations**

With regard to Plaintiff's stress-related limitations, he contends that Dr. Newman, a consulting examiner, found that Plaintiff had marked difficulty in his ability to respond to work pressures in a usual work setting, and moderate ability to respond to workplace changes. The ALJ gave Dr. Newman's opinion "significant weight," stating that the opinion was generally consistent with Plaintiff's treatment records, and his own examination of Plaintiff. Similarly, Dr. Link, a non-examining agency consultant, opined that Plaintiff had moderate limitations in responding to workplace changes. The ALJ gave Dr. Link's opinion "great weight," stating that

3

the opinion was generally consistent with Plaintiff's treatment records, which demonstrate mild to moderate limitations. Accordingly, the ALJ arrived at an RFC with the following non-exertional limitations: low stress, unskilled jobs that are not performed around the public; little judgment making; only routine, repetitive tasks; occasional supervision; minimal contact with coworkers.

Plaintiff's argument encompasses the ALJ's failure to include the "marked" limitation found by Dr. Newman, as well as the ALJ's failure to particularize "low stress" or analyze which types of work tasks Plaintiff might find stressful. As regards the first of these, the ALJ's opinion makes clear that he did not specifically adopt Dr. Newman's marked limitation, because he read the record as demonstrating "only mild to moderate limitations." This explanation is adequate, if not ideal.[2] Moreover, the limitation to "low stress" work may be seen as broadly responding to a limitation to the general category of workplace pressures, as could the other non-exertional limitations that the ALJ included in the RFC. Thus, the ALJ did not err in specifically including a limitation regarding responding to work pressures in a usual work setting.

I am more troubled by the implications, generally, of the failure to particularize the phrase "low stress" as it relates to workplace changes. "Low stress" refers to the demands of the workplace, and is not necessarily related to skill level. See SSR No. 85-15, 1985 SSR LEXIS 20. Typically, therefore, an ALJ defines what he means by "low stress," both in the RFC and when posing a hypothetical question to the Vocational Expert ("VE"). Often, "low stress work"

---

[2] Generally speaking, moderate limitations must be considered when crafting an RFC. Davis v. Astrue, 2007 U.S. Dist. LEXIS 56163, 2007 WL 2248830, *4 (E.D. Pa. July 30, 2007). Thus, I have in other cases remanded on grounds that the ALJ failed to specifically address a limitation stated in an otherwise accepted medical opinion; it is vastly preferable that an ALJ, if giving meaningful weight to a medical opinion, specify why certain limitations stated therein are accepted, and others rejected. Nevertheless, "the ALJ is not required to conclude that every limitation affects the RFC of a claimant."
Lupold v. Comm'r of Soc. Sec., 2014 U.S. Dist. LEXIS 105132 (D.N.J. July 31, 2014). Under all the circumstances of this case, the ALJ appears to have reasonably concluded that more specific stress-related limitations were not warranted in the RFC.

is expressly defined to include limited changes in the work setting. E.g., Feeley v. Comm'r of Soc. Sec., 2015 U.S. Dist. LEXIS 71690 (D.N.J. June 3, 2015); Miller v. Colvin, 2014 U.S. Dist. LEXIS 3610 (W.D. Pa. Jan. 13, 2014). Just as often, the phrase is defined otherwise, without reference to changes in the workplace. E.g., Gonzalez v. Colvin, 2014 U.S. Dist. LEXIS 42126 (N.D. Ohio Mar. 28, 2014); Johnson v. Colvin, 2015 U.S. Dist. LEXIS 71113 (S.D. Ohio June 2, 2015); Trauterman v. Colvin, 1 F. Supp. 3d 432 (W.D. Pa. 2014). Accordingly, the failure to define the phrase complicates review.

Accordingly, some courts have found the use of undefined "low stress" objectionable, while others have not. For example, in Lennartz v. Colvin, 2013 U.S. Dist. LEXIS 48726, at **10-11 (W.D. Pa. Apr. 4, 2013), the RFC defined the term "low stress work" to mean simple, routine, repetitive work. Nonetheless, the hypothetical question to the VE relating simply to "low stress" jobs, without the ALJ's definition, was found insufficiently descriptive to limit the VE's consideration to simple, routine, and repetitive jobs. Id. at **10-11.[3] In contrast, in Pykor v. Comm'r of Soc. Sec., 2015 U.S. Dist. LEXIS 35028 (M.D. Fla. Mar. 20, 2015), the court rejected an argument that the unadorned term "low stress" was inadequate. Instead, the court found that the ALJ considered the evidence relating to the plaintiff's mental impairment, and its effect on her work, in an appropriate analysis; the resulting RFC of "low stress" required no further detail. Id. at **8-9, 12.

For various reasons, the ALJ's failure to specify limitations in adapting to workplace changes, although problematic, is not grounds for remand in this case.[4] For example, several courts have recently noted that the job of dishwasher could be performed by a person limited in his ability to respond to workplace changes and pressures. Sharrow v. Comm'r of Soc. Sec., 2015

---

[3] Cf. Grubby v. Astrue, 2010 U.S. Dist. LEXIS 139211 (stating that stress is "highly individualized" inquiry).
[4] I note, too, that unlike in Lennarz, there is no indication that the ALJ here clearly intended to define "low stress" in a particular way, and then mistakenly omitted that definition from his hypothetical to the VE.

5

U.S. Dist. LEXIS 40082, at *9 (E.D. Mich. 2015); Herron v. Colvin, 2014 U.S. Dist. LEXIS 56636, at *6 (W.D. Va. Mar. 20, 2014). The VE, here, testified that 450,000 dishwasher jobs exist nationally. Even if the other jobs testified to by the VE could not be performed with specific stress-related limitations, that number is sufficient to support a finding of non-disability. See, e.g., Madrid v. Astrue, 2011 U.S. Dist. LEXIS 65122, at **12-13 (C.D. Cal. June 17, 2011). Moreover, I note that Plaintiff's counsel, at the initial level, did not object to the ALJ's failure to define low stress, and did not question the VE regarding specific stressors. Finally, the ALJ in this case conducted a thorough analysis that considered the longitudinal record, including the medical opinion relevant to limitations on Plaintiff's ability to respond to workplace pressures and changes. Under the circumstances, remand is not warranted.

## CONCLUSION

An undefined restriction to "low stress" work, or a failure to specify why certain limitations are included in an RFC while others are not, may constitute error and grounds for remand. In this particular case, however, they do not. Nonetheless, an ALJ should take care to explain the grounds for accepting or rejecting limitations, and to carefully craft each RFC. Plaintiff's Motion will be denied, and Defendant's granted. An appropriate Order follows.

# ORDER

AND NOW, this 9th day of July, 2015, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's GRANTED.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court